UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTONIO NATHANIEL SPEED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:13CV2001 HEA |
| | ) |
| EUGENE NEAL, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, [Doc. No. 29]. Plaintiff has not responded to the Motion. For the reasons set forth below, the Motion is granted.

**Facts and Background[1]**

Plaintiff filed a Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983 on or about October 7, 2013 against: Ashley Goad, Eugene Neal, Correctional Officer Williams. At the time of the Complaint, Plaintiff was an inmate at a jail operated by the Jennings Department of Corrections. Defendants were

---

[1] Defendant has filed a Statement of Uncontroverted Facts. Plaintiff, in contravention of this Court's Local Rule 7-4.01(E), failed to specifically controvert any of Defendant's facts. Likewise, Plaintiff failed to present his own Statement of Uncontroverted Facts. Consequently, Defendant's Statement of Uncontroverted Facts is taken as admitted by Plaintiff.

employees of the Jennings Department of Corrections.

Plaintiff is currently an inmate of the United States Bureau of Prisons m Leavenworth, Kansas. Plaintiff is a practicing Muslim and member of the 978 ministries and 978 Coalition of America. As a practicing Muslim, Plaintiff has dietary restrictions which prohibit him from eating pork.

Defendant Neal is a Lieutenant with supervisory capacity over the Facility. Defendant Ashley Goad is a Correctional Officer with the Facility.

Meals for inmates are provided each day by an outside catering service, SK Food Services. Once the meals are received from SK Food Services, a trustee, who is a fellow inmate, is charged with delivering the trays of food to each inmate in their cell. The trustee is charged with checking the meals to insure there is a correct count for each dietary restriction.

On September 19, 2013, Plaintiff was the last inmate to receive his lunch tray. When the trustee arrived at Plaintiff s cell there were no non-pork trays remaining. Plaintiff refused to accept the pork tray that remained. The tray was a styrofoam container. The remaining tray contained a sandwich, bag of chips, cup of fruit, and cup of soup. The soup, chips, and fruit were individually wrapped and never touched the pork on the sandwich.

Plaintiff contacted Defendant Goad and told her he needed a substitute

meal because there were no more non-pork trays. Defendant Goad consulted with her supervisor, Lieutenant McCarthy, and advised Plaintiff he would need to take the pork items off the tray and eat the remaining items. Defendant Goad believed the items on the tray were individually wrapped so there was no cross-contamination with the pork on the sandwich.

Plaintiff refused to eat the non-pork items on the tray because he personally believes that even if the other items are individually wrapped, the tray is closed in and all items are contaminated with pork. Defendant Goad did not deliberately try to feed Plaintiff pork as a Muslim; the Facility simply did not have enough non-pork trays. The denial of a non-pork meal occurred only on this one occasion for a four hour period and Plaintiff received non-pork trays for every meal prior to and after September 19, 2013. Plaintiff received non-pork meals for breakfast and dinner on September 19, 2013. The lack of a non-pork lunch tray on September 19, 2013 was unintentional and not motivated by religion.

Plaintiff filed a grievance with regard to the September 19, 2013 lunch tray incident, but alleges he did not receive a response in order to appeal. A review of the Facility's records reveals a response to Plaintiff's grievance was filed on September 19, 2013. Plaintiff did not appeal Lieutenant Neal's response.

Plaintiff claims that during the month of Ramadan he was not permitted to have an Islamic Predawn Meal. Plaintiff was admitted to the Facility on July 13,

3

2013, the second day of Ramadan. During his initial medical screening and intake, Plaintiff specified he required a "non-pork" diet and there is no reference to a request for Predawn Meals. Inmates are permitted to modify meal services for medical or reasonable religious requirements during medical pre-screening and through approval of Corrections Medical Staff or the Program Manager, Defendant Neal. There is no documentation showing Plaintiff requested revisions to his diet.

Plaintiff claims he spoke with Defendant Goad, and other officers, in July 2013 regarding his need for Predawn Meals and Defendant Goad and the other officers told him to talk to Defendant Neal.

Defendant Goads' alleged instructions to Plaintiff were consistent with the Jennings Department of Corrections Inmate Handbook. Plaintiff alleges he filed a grievance related to his lack of Predawn Meals, but stated "I don't know what happened to it" and cannot produce a copy. There is no record of Plaintiff filing a grievance related to Predawn Meals. Defendant Neal had no knowledge of Plaintiff s desire for Predawn Meals prior to this lawsuit. Plaintiff was permitted to keep the standard Facility breakfast, a Muffin, in his cell overnight and any food he purchased in the commissary.

Plaintiff alleges the Facility "does not provide Holy Qur'an of Mecca or the Moorish Science Temple, does not provide Muslims with an area to congregate for

worship and prayer, and there are no clocks which impedes Plaintiff s ability to do daily prayers at the correct times." Plaintiff claims he filed a grievance regarding a Quran, place to congregate, and clocks. A review of the Facility's records reveals no documentation of Plaintiff s grievance regarding a Quran, place to congregate, and clocks. Plaintiff is unable to produce documentation of his grievance.

Plaintiff was never denied the opportunity to have his own copy of the Quran in the Facility. Plaintiff's allegation is the Facility does not provide inmates with institutional copies of the Quran or any religious materials.

Plaintiff alleges he requested inmates be able to congregate within their cells for prayer and worship, but admits he has never requested any other room for Muslim inmates specifically to congregate. Inmates are not permitted to congregate in each other's cells due to safety concerns related to violence, contraband and monitoring of inmates.

Plaintiff was never been told that he could not purchase a clock or bring an approved clock into his cell. Plaintiff could have requested a clock through commissary or received approval from Defendant Neal for certain types of clocks which are deemed safe for inmate use.

Plaintiff has alleged damages of Thirty Million ($30,000,000.00) for the mental, spiritual, and emotional distress. Plaintiff does not claim physical injuries.

The prison grievance process is documented in the Inmate Handbook and

Plaintiff was aware he had to file a grievance and appeal a response.

The Facility does not provide religious materials to any inmate regardless of religion, and do not specifically limit the exclusion to Muslims. The Facility does not allow any prisoners to congregate in their cells and do not specifically limit the prohibition to Muslims.

Defendant Neal never spoke with anyone, including Plaintiff, about Plaintiff's dietary requests. Plaintiff never filed a grievance regarding Defendant Neal's training of correctional officers.

Plaintiff's Complaint only alleges he filed a single grievance which was with regard to the September 19, 2013 lunch.

**Summary Judgment Standard**

Summary judgment is appropriate when there exists no genuine dispute as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party has the burden to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995).

"'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995) (quotation omitted)." *Putman v. Unity Health System,* 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

## Discussion

Plaintiff brought this action pursuant to 42 U.S.C. 1983 against the Defendants claiming Defendants interfered with his religious practices specific to dietary restrictions and, with respect to Defendant Goad, that Goad failed to train personnel.

Under the Free Exercise Clause, Plaintiff must first raise a material question of fact regarding whether Defendants have placed a "substantial burden" on his ability to practice his religion. *See Weir v. Nix,* 114 F.3d 817, 820 (1997) (Free Exercise Clause).

Defendants argue they are entitled to qualified immunity.

> "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ibid.* (brackets and internal quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd,* 563 U.S. ——, ——, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.,* at ——, 131 S.Ct., at 2083.

*Taylor v. Barkes*, ___ U.S. ___, 135 S.Ct. 2042, 2044 (2015).

Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir.2006) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. *Brown v. City of Golden Valley,* 574 F.3d 491, 496 (8th Cir.2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, *Pearson v.*

8

*Callahan,* 555 U.S. 223, 235–36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen,* 684 F.3d 740, 746 (8th Cir.2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright,* 636 F.3d 396, 399 (8th Cir.2011) (internal quotation marks and citation omitted). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith,* 696 F.3d 716, 738 (8th Cir.2012) (internal quotation marks and citation omitted). "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Nelson v. Correctional Medical Services,* 583 F.3d 522, 531 (8th Cir.2009) (internal quotation marks and citation omitted).

Defendant Goad contends that the allegations in Plaintiff's Complaint are insufficient to withstand summary judgment. Defendant correctly argues that denial of a single lunch, the sole allegation against her, does not rise to a constitutional violation. The Court agrees. See, *Wilkens v. Roper*, 843 F.Supp. 1327, 1328 (E.D. Mo. 1994); *Thomas v. Northern*, 574 F.Supp.2d 1029, 1034

(E.D. Mo. 2008).

Moreover, Defendant Neal is entitled to judgment on Plaintiff's failure to train claims. A claim under Section 1983 requires a plaintiff to plead and prove that each defendant was personally involved in the alleged deprivation of a constitutional right. *Beck v. LaFleur,* 257 F.3d 764, 765 (8th Cir.2001); *Martin v. Sergent,* 780 F.2d 1334, 1337 (8th Cir.1985). The plaintiff "must allege facts supporting any individual defendant's personal involvement in or responsibility for the violations." *Ellis v. Norris,* 179 F.3d 1078, 1078 (8th Cir.1999). The requisite personal involvement cannot be based upon *respondeat superior* or vicarious liability. *Iqbal,* 556 U.S. at 670; *Canton v. Harris,* 489 U.S. 378, 385 (1989). Allegations that the supervisor "knew of, condoned, and willfully and maliciously agreed to subject" to, was the "principal architect" of the unconstitutional policy, etc. alone are not sufficient to establish supervisory liability unless they are affirmatively supported in the plaintiff's complaint. *Iqbal,* 556 U.S. at 680–681.

"[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation[.]" *Parrish v. Ball,* 594 F.3d 993, 1001 & n. 1, 1002 (8th Cir.2010) (internal quotations and citation omitted).

Plaintiff has failed to establish that he suffered a constitutional deprivation through any failure on the part of Defendant Neal to train his inferior personnel. Plaintiff testified that he was not denied the right to have his own Qur'an or a clock for daily prayers, just that the facility did not provide these items. Plaintiff has presented no authority that the facility must constitutionally provide religious materials for each incarcerated person practicing any religion.

Likewise, Plaintiff never requested a place for Muslims to congregate in general. Nor is there evidence that Defendant Neal knew of Plaintiff's alleged request of the correctional officers for predawn meals during Ramadan. The officers advised Plaintiff that he would have to contact Neal for this request, which advice is consistent with the Inmate Handbook. Plaintiff presents no evidence to the contrary.

## Conclusion

Plaintiff has failed to respond to Defendant's Motion for Summary Judgment with any evidence that the claims he presented in his Complaint entitle him to the relief requested. Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 29], is granted.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 24th day of June, 2015.

                                                HENRY EDWARD AUTREY
                                            UNITED STATES DISTRICT JUDGE